IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
_____ DIVISION

Glen Hugh Todd
Middle Tennessee Space
center for Toxic under ground
Name of Plaintiff(s) Nuclear Reactors

v.

Rutherford County
Middle Tennessee Space
center for Toxic under
ground new Necular Recator
Name of Defendant(s)

*The Biggest one in the world*

Bust Opec.

Case No. _____
(To be assigned by Clerk)

RECEIVED
IN CLERK'S OFFICE
OCT 03 2017
U. S. DISTRICT COURT
MID. DIST. TENN.

## COMPLAINT

1. State the grounds for filing this case in Federal Court (include federal statutes and/or U. S. Constitutional provisions, if you know them):
   Realestate Fraud and Premeditated murder

2. Plaintiff, Rutherford County and Middle Tennessee SSC resides at
   3858 Hickory grove Rd. , _____ ,
   Street address                           City
   Rutherford , Tennessee , 37129 , 615-967-0282
   County      State        Zip Code   Telephone Number

   (If more than one plaintiff, provide the same information for each plaintiff below.)

   Ted Turner and his family, Opec
   Far East Restaurant, Jones Bros. Construction
   Jody Barney and her armies, Communist

Case 3:17-cv-01337   Document 1   Filed 10/03/17   Page 1 of 5 PageID #: 1

2

3. Defendant, _____ resides at

_____, _____,
Street address                City

_____, _____, _____, _____,
County      State        Zip Code    Telephone Number

(If more than one defendant, provide the same information for each defendant below.)

_____

_____

_____

4. Statement of claim. (State as briefly as possible, the facts of your case. Describe how each Defendant is involved. Include also the names of other persons involved, dates, and places. Be as specific as possible. You may use additional paper if necessary. Attach any documentation or exhibits in support of the complaint):

_____

_____

_____

_____

_____

_____

_____

_____

5.  Prayers for Relief (List what you want to Court to do):

   a. _____
      _____
      _____.

   b. _____
      _____
      _____.

   c. _____
      _____
      _____.

   d. _____
      _____
      _____.

I (We) hereby certify under penalty of perjury that the above Petition is true to the best of my (our) information, knowledge, and belief.

   Signed this _____ day of _____, 20_____.

   _____
   _____
   _____
   _____Glen Hugh Todd_____
   (Signature of Plaintiff(s))

lives that would be saved was not subject to quantification. Nor did it question his conclusion that the reduction was "feasible."

In these circumstances, the Secretary's decision was reasonable and in full conformance with the statutory language requiring that he "set the standard which most adequately assures, to the extent feasible, on the basis of the best available evidence, that no employee will suffer material impairment of health or functional capacity even if such employee has regular exposure to the hazard dealt with by such standard for the period of his working life." 29 U.S.C. § 655(b)(5). On this record, the Secretary could conclude that regular exposure above the 1 ppm level would pose a definite risk resulting in material impairment to some indeterminate but possibly substantial number of employees. Studies revealed hundreds of deaths attributable to benzene exposure. Expert after expert testified that no safe level of exposure had been shown and that the extent of the risk declined with the exposure level. There was some direct evidence of incidence of leukemia, nonmalignant blood disorders, and chromosomal damage at exposure levels of 10 ppm and below. Moreover, numerous experts testified that existing evidence required an inference that an exposure level above 1 ppm was hazardous. We have stated that "well-reasoned expert testimony—based on what is known and uncontradicted by empirical evidence—may in and of itself be 'substantial evidence' when firsthand evidence on the question . . . is unavailable." *FPC v. Florida Power & Light Co.*

26. This is not to say that the Secretary is prohibited from examining relative costs and benefits in the process of setting priorities among hazardous substances, or that systematic consideration of costs and benefits is not to be attempted in the standard-setting process. Efforts to quantify costs and benefits, like statements of reasons generally, may help to promote informed consideration of decisional factors and facilitate judicial review. See *Dunlop v. Bachowski*, 421 U.S. 560, 571–574, 95 S.Ct.

from acting when definitive information as to the quantity of a standard's benefits is unavailable.[26] Where, as here, the deficiency in knowledge relates to the extent of the benefits rather than their existence, I see no reason to hold that the Secretary has exceeded his statutory authority.

B

The plurality avoids this conclusion through reasoning that may charitably be described as obscure. According to the plurality, the definition of occupational safety and health standards as those "reasonably necessary or appropriate to provide safe or healthful . . . working conditions" requires the Secretary to show that it is "more likely than not" that the risk he seeks to regulate is a "significant" one. *Ante*, at 2869. The plurality does not show how this requirement can be plausibly derived from the "reasonably necessary or appropriate" clause. Indeed, the plurality's reasoning is refuted by the Act's language, structure, and legislative history, and it is foreclosed by every applicable guide to statutory construction. In short, the plurality's standard is a fabrication bearing no connection with the acts or intentions of Congress.

At the outset, it is important to observe that "reasonably necessary or appropriate" clauses are routinely inserted in regulatory legislation, and in the past such clauses have uniformly been interpreted as general provisos that regulatory actions must bear a reasonable relation to those statutory purposes set forth in the statute's substantive provisions. See, e.g., *FCC v. National Citizens Comm. for Broadcasting*, 1851, 1859–61, 44 L.Ed.2d 377 (1975). The Secretary indicates that he has attempted to quantify costs and benefits in the past. See 43 Fed.Reg. 54354, 54427–54431 (1978) (lead); *id.*, at 27350, 27378–27379 (cotton dust).

It is not necessary in the present litigation to say whether the Secretary must show a reasonable relation between costs and benefits. Discounting for the scientific uncertainty, the Secretary expressly—and reasonably—found such a relation here.

required to immerse themselves in matters to which they are unaccustomed by training or experience. Second, the factual issues with which the Secretary must deal are frequently not subject to any definitive resolution. Often "the factual finger points, it does not conclude." *Society of Plastics Industry, Inc. v. OSHA*, 509 F.2d 1301, 1308 (CA2) (Clark, J.), cert. denied, 421 U.S. 992, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975). Causal connections and theoretical extrapolations may be uncertain. Third, when the question involves determination of the acceptable level of risk, the ultimate decision must necessarily be based on considerations of policy as well as empirically verifiable facts. Factual determinations can at most define the risk in some statistical way; the judgment whether that risk is tolerable cannot be based solely on a resolution of the facts.

The decision to take action in conditions of uncertainty bears little resemblance to the sort of empirically verifiable factual conclusions to which the substantial evidence test is normally applied. Such decisions were not intended to be unreviewable; they too must be scrutinized to ensure that the Secretary has acted reasonably and within the boundaries set by Congress. But a reviewing court must be mindful of the limited nature of its role. See *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). It must recognize that the ultimate decision cannot be based solely on determinations of fact, and that those factual conclusions that have been reached are ones which the courts are ill-equipped to resolve on their own.

Under this standard of review, the decision to reduce the permissible exposure level to 1 ppm was well within the Secretary's authority. The Court of Appeals upheld the Secretary's conclusions that benzene causes leukemia, blood disorders, and chromosomal damage even at low levels, that an exposure level of 10 ppm is more dangerous

Secretary's determination if supported by the record con- 29 U.S.C. § 655(f). ts a legislative judg- action should be sub- ringent than the tra- d capricious" standard king. We have ob- itrary and capricious emphasis a searching ts" in order to deter- ecision was based on a relevant factors and clear error of *Overton o Preserve Overton* J.S. 402, 416, 91 S.Ct. (1971). Careful ask is especially impor- has imposed the com- orous substantial evi- As we have empha- cial review under the test ultimately def- *Richardson v. Perales*, 1 S.Ct. 1420, 1427, 28 *Consolo v. Federal Maritime Comm'n*, U.S. 607, 618–621, 86 16 L.Ed.2d 131 (1966). n is entitled to the tra- n of validity, and the rized to substitute its f the Secretary. If the ered the decisional fac- conformance with the decision must be given respect. *Id.*, at 621, 86

ensitive to three factors, make judicial review, safety and health standards stantial evidence test

permits the Secretary action, or whether nued exposure until uation becomes available.

Case 3:17-cv-01337 Document 1 Filed 10/03/17 Page 4 of 5 PageID #: 4

the issues of
nical complexi-
the courts are
lves in matters
ned by training
 factual issues
must deal are
 definitive res-
inger points, it
 of Plastics In-
.2d 1301, 1308
d, 421 U.S. 992,
 (1975). Causal
 extrapolations
when the ques-
of the accepta-
e decision must
nsiderations of
verifiable facts,
at most define
way; the judg-
olerable cannot
on of the facts.

n in conditions
resemblance to
ifiable factual
ubstantial evi-
ed. Such deci-
e unreviewable;
 to ensure that
easonably and
 Congress. But
mindful of the
 See *Vermont
 v. NRDC*, 435
5 L.Ed.2d 460
at the ultimate
ely on determi-
se factual con-
iched are ones
pped to resolve

view, the deci-
e exposure lev-
the Secretary's
Appeals upheld
 that benzene
ders, and chro-
 levels, that an
nore dangerous

---

than one of 1 ppm, and that benefits will result from the proposed standard. It did not set aside his finding that the number of lives that would be saved was not subject to quantification. Nor did it question his conclusion that the reduction was "feasible."

In these circumstances, the Secretary's decision was reasonable and in full conformance with the statutory language requiring that he "set the standard which most adequately assures, to the extent feasible, on the basis of the best available evidence, that no employee will suffer material impairment of health or functional capacity even if such employee has regular exposure to the hazard dealt with by such standard for the period of his working life." 29 U.S.C. § 655(b)(5). On this record, the Secretary could conclude that regular exposure above the 1 ppm level would pose a definite risk resulting in material impairment to some indeterminate but possibly substantial number of employees. Studies revealed hundreds of deaths attributable to benzene exposure. Expert after expert testified that no safe level of exposure had been shown and that the extent of the risk declined with the exposure level. There was some direct evidence of incidence of leukemia, nonmalignant blood disorders, and chromosomal damage at exposure levels of 10 ppm and below. Moreover, numerous experts testified that existing evidence required an inference that an exposure level above 1 ppm was hazardous. We have stated that "well-reasoned expert testimony—based on what is known and uncontradicted by empirical evidence—may in and of itself be 'substantial evidence' when first-hand evidence on the question . . . is unavailable." *FPC v. Florida Power &*

*Light Co.*, 404 U.S. 453, 464–465, 92 S.Ct. 637, 644, 30 L.Ed.2d 600 (1972). Nothing in the Act purports to prevent the Secretary from acting when definitive information as to the quantity of a standard's benefits is unavailable.[26] Where, as here, the deficiency in knowledge relates to the extent of the benefits rather than their existence, I see no reason to hold that the Secretary has exceeded his statutory authority.

B

The plurality avoids this conclusion through reasoning that may charitably be described as obscure. According to the plurality, the definition of occupational safety and health standards as those "reasonably necessary or appropriate to provide safe or healthful . . . working conditions" requires the Secretary to show that it is "more likely than not" that the risk he seeks to regulate is a "significant" one. *Ante*, at 2869. The plurality does not show how this requirement can be plausibly derived from the "reasonably necessary or appropriate" clause. Indeed, the plurality's reasoning is refuted by the Act's language, structure, and legislative history, and it is foreclosed by every applicable guide to statutory construction. In short, the plurality's standard is a fabrication bearing no connection with the acts or intentions of Congress.

At the outset, it is important to observe that "reasonably necessary or appropriate" clauses are routinely inserted in regulatory legislation, and in the past such clauses have uniformly been interpreted as general provisos that regulatory actions must bear a reasonable relation to those statutory purposes set forth in the statute's substantive provisions. See, *e. g., FCC v. National Citi-*

---

26. This is not to say that the Secretary is prohibited from examining relative costs and benefits in the process of setting priorities among hazardous substances, or that systematic consideration of costs and benefits is not to be attempted in the standard-setting process. Efforts to quantify costs and benefits, like statements of reasons generally, may help to promote informed consideration of decisional factors and facilitate judicial review. See *Dunlop v. Bachowski*, 421 U.S. 560, 571–574, 95 S.Ct. 1851, 1859–61, 44 L.Ed.2d 377 (1975). The Secretary indicates that he has attempted to quantify costs and benefits in the past. See 43 Fed.Reg. 54354, 54427–54431 (1978) (lead); *id.*, at 27350, 27378–27379 (cotton dust).

It is not necessary in the present litigation to say whether the Secretary must show a reasonable relation between costs and benefits. Discounting for the scientific uncertainty, the Secretary expressly—and reasonably—found such a relation here.

Case 3:17-cv-01337   Document 1   Filed 10/03/17   Page 5 of 5 PageID #: 5